FILED
Jan 08, 2019
02:11 PM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | |
|---|---|
| John Vanveldhuizen, <br> Employee, <br><br> v. <br> Crown Automotive Group, Inc., <br> Employer, <br> And <br> FFVA Mutual Ins. Co., <br> Carrier. | ) Docket No.: 2018-01-0388 <br> ) <br> ) <br> ) <br> ) State File No.: 79301-2017 <br> ) <br> ) <br> ) Judge Thomas Wyatt <br> ) <br> ) |

---

## EXPEDITED HEARING ORDER FOR ADDITIONAL MEDICAL BENEFITS

---

This matter came before the Court on January 3, 2019, for an in-person Expedited Hearing requested by John Vanveldhuizen.[1] The issue is whether Crown Automotive Group, Inc. (Crown) must authorize a third lumbar surgery recommended by the treating physician. Crown denied the surgery based on a utilization review (UR) physician's opinion that the surgery was not medically necessary. For the reasons below, the Court orders Crown to authorize the surgery.

### History of Claim

Mr. Vanveldhuizen injured his low back at work. Crown accepted the claim and authorized treatment with orthopedist Dr. Jay Jolley, who diagnosed radiculopathy caused by a moderate-to-large L4-5 disk herniation.

Dr. Jolley performed authorized L4-5 microdiskectomy surgery on February 28, 2018. He noted in his operative report that Mr. Vanveldhuizen "was at risk for a recurrent piece of disk herniating, given his relatively young age."[2] Dr. Jolley performed a second authorized L4-5 microdiskectomy eleven days after the first surgery.

---

[1] Mr. Vanveldhuizen requested an on-the-record determination, but the Court set an in-person hearing on Crown's request.

[2] Mr. Vanveldhuizen is thirty-eight years old.

1

Part of Crown's argument against authorizing the recommended surgery arises from the circumstances leading up to the second surgery. Mr. Vanveldhuizen testified that the pain he experienced after the first surgery severely worsened when he drove to and from his first post-surgery visit with Dr. Jolley.[3] However, Dr. Jolley's March 11 operative report noted that Mr. Vanveldhuizen reported his left-leg pain resolved after the first surgery, but it immediately returned because he "thinks" he hit a bump in the road[4] while driving home from the "office."[5] Dr. Jolley stated in the operative note that, on March 7, Mr. Vanveldhuizen underwent an MRI that revealed a recurrent L4-5 herniated disk. Even in consideration of the alleged report that Mr. Vanveldhuizen's pain returned when his car struck a bump in the road, Dr. Jolley stated in his operative note, "I still feel this is related to the initial injury."

The second surgery failed to relieve Mr. Vanveldhuizen's back and left-leg pain. Dr. Jolley ordered physical therapy, which significantly increased his pain. Mr. Vanveldhuizen testified that Dr. Jolley cancelled the therapy, but the therapist notes indicate that the provider discharged him due to missing scheduled appointments.[6] In any event, Dr. Jolley ordered a May 7 MRI that showed a "probable combination of scar and posterior disc bulging which mildly deforms the ventral thecal sac but does not cause significant mass effect."

Dr. Jolley mentioned the possibility of a second recurrent herniated disk in his note documenting the second surgery, writing: "[w]e also discussed the fact that if a third large herniation occurs, then he unfortunately will likely need to consider a fusion or disk replacement." Dr. Jolley considered the May 7 MRI results to confirm his concern about another recurrent herniated L4-5 disk and ordered fusion surgery.

Crown submitted the surgery recommendation to UR. Dr. Richard Lutz, a board-certified orthopedist, performed the assessment. Dr. Lutz did not examine Mr. Vanveldhuizen but determined medical necessity based on documentation provided him by Crown. Dr. Lutz concluded the surgery was not medically necessary under the Bureau's treatment guidelines because the documentation he received did not contain:

---

[3] Mr. Vanveldhuizen testified this was his first post-surgery driving experience, and that the round-trip involved one and one-half hours of driving.

[4] Mr. Vanveldhuizen denied that his pain worsened when his car struck a bump in the road, and he denied telling Dr. Jolley anything of that nature.

[5] The Court interprets "office" to refer to Dr. Jolley's office.

[6] Records indicate that Mr. Vanveldhuizen participated in five therapy sessions following the second surgery.

2

- flexion/extension x-rays documenting lumbar instability;[7]
- MRI evidence of nerve root compression;
- records reflecting whether Mr. Vanveldhuizen's symptoms progressed or regressed during non-surgical care such as physical therapy and spinal injections;[8] and
- a psychosocial screen.

Dr. Lutz also based his opinion on a statement in the Bureau's treatment guidelines recommending against fusion surgery for degenerative disk disease and/or disk herniation suffered by employees with workers' compensation claims. Mr. Vanveldhuizen unsuccessfully appealed Dr. Lutz's decision to the Bureau's medical director, and Crown denied authorization for the surgery.

Mr. Vanveldhuizen filed this claim to compel Crown to authorize the surgery. Afterward, Crown's attorney wrote Dr. Jolley for his opinion whether Mr. Vanveldhuizen's first recurrent L4-5 herniation primarily arose when he hit a bump while driving. Dr. Jolley responded that the first recurrent disk was "a result primarily from the traumatic annulotomy secondary to the [original] disc herniation." Crown's attorney also questioned why Dr. Jolley recommended fusion surgery, to which Dr. Jolley answered that Mr. Vanveldhuizen needed it "given the herniation & the instability now present."

Mr. Vanveldhuizen submitted Dr. Jolley's affidavit at the Expedited Hearing. In it, Dr. Jolley elaborated as follows on his opinion that surgery is medically necessary:

> In my opinion, my request for surgery falls within the treatment guidelines and is absolutely medically necessary. Mr. Vanveldhuizen has lumbar spine instability and radiculopathy, as documented in my records and by my physical examination and we have tried conservative care such as physical therapy which only makes Mr. Vanveldhuizen's pain and instability worse. Furthermore, we have tried two prior microdiscectomies and Mr. Vanveldhuizen developed a third recurrent herniation clearly indicating a fusion procedure is necessary as Dr. Lutz' own report makes clear.[9]

---

[7] Dr. Jolley contended in his response to an inquiry made by Crown's counsel and, later in his affidavit, that the MRI taken after the second surgery documented lumbar instability.

[8] The records documenting Mr. Vanveldhuizen's participation in physical therapy were available but not sent to Dr. Lutz.

[9] Dr. Lutz's report stated: "[a]fter failure of two discectomies on the same disc, fusion may be an option at the time of the third discectomy, which should also meet the ODG criteria. (See ODG Indication for Surgery—Discectomy.)"

3

Mr. Vanveldhuizen relied on Dr. Jolley's medical-necessity opinion, while Crown urged the Court to uphold its denial of the surgery based on the opinions of Dr. Lutz and the medical director. Crown also contended that the symptoms underlying Mr. Vanveldhuizen's need for the third surgery did not arise primarily out of and in the course and scope of employment because they were caused by him hitting a bump while driving. Lastly, Crown contended that the Court should deny the surgery because Mr. Vanveldhuizen failed to comply with physical therapy.

## Findings of Fact and Conclusions of Law

Mr. Vanveldhuizen seeks an order requiring Crown to authorize the recommended fusion surgery. He need not prove his entitlement to the surgery by a preponderance of the evidence but instead must present sufficient evidence showing he would likely prevail on that issue at a hearing on the merits. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The Court first addresses Crown's arguments that it should deny the surgery because Mr. Vanveldhuizen's current pain was caused by hitting a bump while driving and/or because he was non-compliant with physical therapy. Crown introduced no medical evidence to support either argument; thus, the Court rejects them.

The Court applies certain statutory presumptions in determining which of the competing medical-necessity opinions to accept. Tennessee Code Annotated section 50-6-204(a)(3)(H) (2018) affords a presumption of medical necessity for treatment recommended by an authorized treating physician. In *Morgan v. Macy's,* 2016 TN Wrk. Comp. App. Bd LEXIS 35, at *17 (Aug. 31, 2016), the Workers' Compensation Appeals Board held that this presumption is rebuttable by a showing of the preponderance of the evidence.

Tennessee Code Annotated section 50-6-124(h) and subsection 204(a)(3)(I) strengthen the presumption in favor of the treating physician's recommendation when it is shown that it is consistent with the Bureau's treatment guidelines. In that event, the opponent of the recommended treatment must come forward with "clear and convincing evidence demonstrating that the recommended treatment substantially deviates from, or presents an unreasonable interpretation of, the treatment guidelines" to overcome the presumption of medical necessity.

The Court first holds that it is not bound to accept the decision of a UR physician, and it may evaluate the opinion of the UR physician just as it does any other medical expert. *See Ledford v. Mid Georgia Courier, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 28, at *4 (June 4, 2018). The Court located no authority indicating that it must presume a UR physician's opinion correct.

4

In evaluating expert medical opinions, a trial judge may consider, among other things, the qualifications of the experts, the circumstances of their evaluation, and the information available to them. *Venable v. Superior Essex, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 56, at *6 (Nov. 2, 2016). As the Supreme Court held, "[w]hen faced . . . with conflicting medical testimony . . ., it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) (citation omitted) (internal quotation marks omitted).

Because Dr. Jolley is the authorized treating physician, the Court affords his opinion the presumption in subsection 50-6-204(a)(3)(H). The Court will not afford his opinion the stronger presumption for a treating physician's recommendation consistent with the Bureau's treatment guidelines because neither party introduced the guidelines into evidence, and because Dr. Jolley failed to adequately state why his recommended treatment complied with them. Without this proof, the Court is unable to apply the standard of 50-6-204(a)(3)(I). *See Morgan*, at *18 (holding that a trial court cannot itself apply the Bureau's treatment guidelines to specific treatment without medical proof on the issue of compliance, or lack of compliance, with the guidelines.) Thus, the Court must order that Crown authorize the recommended surgery unless the preponderance of the evidence dictates that the surgery is not medically necessary.

Here, the Court adopts Dr. Jolley's opinion over Dr. Lutz's. Dr. Jolley has a long history of treating Mr. Vanveldhuizen for this injury, including performing two surgeries that Crown authorized. Dr. Jolley's opinion is buttressed by his identification before both previous surgeries that Mr. Vanveldhuizen might endure post-surgical recurrent disk herniations and require disk-replacement or fusion surgery. Finally, the facts that Dr. Lutz never saw Mr. Vanveldhuizen and Crown did not provide him a copy of the records documenting the physical therapy further support the Court's decision that the preponderance of the evidence does not rebut the medical necessity of the surgery.

Thus, the Court holds Mr. Vanveldhuizen established that he will likely prevail at trial in proving the medical necessity of the fusion surgery recommended by Dr. Jolley.

**IT IS, THEREFORE, ORDERED** as follows:

1. Crown shall promptly authorize, schedule and pay for the recommended surgery.

2. This matter is set for a Status Hearing at **10:30 a.m. Eastern Time on April 9, 2019**. You must call (615) 741-3061 or toll-free at (855) 747-1721 to participate. Failure to call may result in a determination of the issues without your further participation.

5

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED January 8, 2019.**

Judge Thomas Wyatt
Court of Workers' Compensation Claims

6

## Appendix

Technical Record:
1. Amended Petition for Benefit Determination
2. Dispute Certification Notice
3. Employee's Brief Supporting Petition for Benefit Determination
4. Request for Expedited Hearing—On-the-Record Determination
5. Employee's Response in Opposition to On-the-Record Determination
6. Order Scheduling In-Person Expedited Hearing
7. Notice of Expedited Hearing
8. Employer's Witness and Exhibit List

Exhibits:
1. Affidavit of John Vanveldhuizen
2. Affidavit of Dr. Jay Jolley
3. Dr. Jolley's response to questionnaire submitted by Employer's Counsel
4. Eckman Freeman UR report
5. UR Appeal Determination
6. Dr. Jay Jolley's records
7. Memorial Health System records
8. ATI Physical Therapy records

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on January 8, 2018.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| Tim Henshaw Employee Attorney | | X | tim@mcmahanlawfirm.com missy@mcmahanlawfirm.com |
| Tiffany Sherrill Alex Morrison Employer Attorney | | X | tbsherrill@mijs.com abmorrison@mijs.com |

w/permission p

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

7



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## EXPEDITED HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

**Employee** _____

v.

**Employer** _____

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

### List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):**_____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellee ***

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant]      _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____

2. Address: _____

3. Telephone Number: _____

4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing $ _____ per month |
| Gas | $ _____ per month | Child Care $ _____ per month |
| Transportation | $ _____ per month | Child Support $ _____ per month |
| Car | $_____ per month | |
| Other | $ _____ per month (describe: _____ ) | |

10. Assets:

Automobile    $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____    (FMV) _____

Other    $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires: _____